The first case for argument is Velasquez-Gaspar v. Barr. Our appellant is Garsh Saran. Petitioner? Good morning, Your Honors. Okay. And let me just check, Roseanne Perry? Yes, good morning. Good morning. Okay, we're ready to go. Mr. Saran. If it pleases the Court, I would like to reserve two minutes for rebuttal. Sure. Thank you very much, Your Honor. This matter has been twice to the Board of Immigration Appeals, and twice they did not deal with the major and the elephant in the room, which is my client's indigenous Maya background. They refused to deal with that. It's a protected ground, and she was harmed because of her ethnicity as a Maya indigenous woman. Everybody agrees on all the facts. There's no dispute on the facts. The government, in their brief, accept all the facts to be truthful. The BIA, in the last decision, the Board of Immigration Appeals, starts and states that her problems in Guatemala at the hands of her persecutor, Brian, occurred because she was a Maya indigenous woman. That is the central issue in this case which hasn't ever been dealt with or resolved. It was due to her ethnicity and Brian's hatred towards her due to her ethnicity as a Mayan woman that she was multiply raped, treated as his chattel, and received and could not receive any protection in her country because the government doesn't acknowledge her as a human being. At the age of three, she couldn't go to school. She was not allowed to get an education. She cannot speak Spanish. The only language she could speak was her native language, indigenous language. There are no police officers in that country who are trained to handle any such claims for indigenous people. All the laws that were passed in Guatemala weren't implemented because nobody cared. The police lacked the training. They could not investigate sexual crimes against women. This court has recognized femicide and has mentioned it numerous times. In this case, sir, in this case, did your client report to the government? She was unable to because of her indigenous background and her lack of language. Did she report? No, she didn't report. Did her friends tell her to report? Her friends did tell her to report. Okay, so just correct me if I'm wrong. For you to prevail, does the record have to compel a different result? Yes, Your Honor. Okay, is that a standard of review? Yes, the law in this circuit is very clear. The way you have a record where the government's failure to enforce its laws and punish violence against women and indigenous people isn't upheld. You do not expect this court has repeatedly stated in published decisions the individual does not have to report. You look at the country conditions. Well, I realize that's not the end of the story. That's not the end of the story. But I'm wondering why isn't the advice of her acquaintances to report abuse to the authorities some evidence that the authorities would have helped? Because her life experience as an indigenous woman where she relocated and he pulled her by his hair and brought her back. He raped her, let his friends rape her. She came to the classification at the age of three or four that she couldn't go to school because people threw stones at her, that she was worthless. As an Indian, as a person who was growing up in Guatemala, she wasn't going to get any kind of protection. That's why she fled, Your Honor. Counsel, this is Judge Van Dyke. What the IJ said about her Mayan ancestry was, IJ said even crediting her testimony, if you look at the first six months of her relationship, he didn't treat her badly according even to her own testimony. That does seem to cut against the fact that he treated her badly because of her race. She was the same race the first six months of their relationship. I think that's what the IJ said. Why is that wrong? No, that's not wrong at all. The relationship started off with a mutual relationship between a man and a woman in Guatemala and degenerated when he saw she could not speak Spanish and she was unable to communicate in Spanish. Counsel, it didn't take him six months to figure out that she couldn't speak Spanish, I would think. Well, it took him six months to control her and know she could be controlled and abused by him. There was no abuse on the first day. The abuse came and she left him, Your Honor. She walked away. She ran away. She was raped by him and his friends not once but four times. That happened. She didn't want to be in that relationship. She left him. But it began in a mutual relationship. That is correct. This is Judge Paez. Under Bringus Rodriguez, we know that reporting to the police doesn't end the analysis, as Judge Callahan just suggested. But what other evidence is there in the record that would allow a finder of fact to conclude that they would be compelled to hold or to find that the police or the authorities in Guatemala are either unwilling or unable? And it seems to be more on the unable prong than the unwilling prong. Well, Your Honor, the country condition reports both in 2011 and 2014 by the United States State Department clearly indicate that in Guatemala they have laws. The laws, they know these are major issues in Guatemala, but they don't enforce them. And they don't punish individuals who commit rape or femicide in that country. And it's prevalent throughout society, and everybody knows that over there, and especially an indigenous woman would know better than anyone else. Isn't that similar? This is Judge Van Dyck. Isn't that similar to the report that was available in Castro Perez about Honduras? And that wasn't dispositive in that case. Well, there's a big difference between Honduras and Guatemala in its treatment of indigenous people and women. This country, Guatemala, as this court has clearly stated in numerous decisions, has a history of attacking, killing, mutilating women, Your Honor. Well, but I think in Castro Perez we held that the record did not compel the conclusion that the Honduran government was unable or unwilling to control the persecution against the petitioner. We noted that the country report showed widespread domestic violence despite governmental efforts to control it. How is this case different? Because this is not a case about domestic violence. This is a case about ethnic hatred. Brian hated her. The government of Guatemala does not protect its indigenous population, besides its women. We cannot avoid her indigenous... I'm sorry. But look, they were in a mutual relationship for six months. So, why does the record compel this case is not about domestic violence? Because she left him. She understood that. She walked away. She relocated. He could hunt her down. He could force himself upon her, pull her by the hair, drag her through the streets of Guatemala and bring her back and then provide her to his friends and have them rape her. That's what happened. The first six months clearly demonstrate there was a mutual relationship and it could be domestic abuse. But then it became one of ethnic hatred, Your Honor. The issue of ethnic hatred and ethnicity in this case permeates every page and the BIA and the IJ refuse to deal with it. It clearly cannot be avoided. You've got a minute left. A minute and 13 seconds. Do you want to save that for rebuttal? Yes, Your Honor. Thank you. Okay. Ms. Perry. May it please the court, Roseanne Perry on behalf of the Attorney General. Substantial evidence supports the agency's denial of petitioner's application to release and protection. Petitioner failed to meet her burden to demonstrate that the Guatemalan government was or will be unable or unwilling to protect her. Well, okay. Since we've framed the issue, I think the State Department country report indicates that more than 90% of the reported cases involving sexual and physical assault against women don't result in convictions and that the perpetrator immunity remains high. Why isn't that enough to show that Guatemalan government is unable to control the beatings and rapes at issue here? Well, just because there's convictions doesn't mean that there are investigations and that people aren't reporting that the government isn't investigating the crime. So I don't believe that that is enough to say that. Well, it's not a good sign. It's not a good sign. Having been a former prosecutor, if my conviction rate was only 10%, I don't think I would have kept my job very long. Usually the conviction rate is more like 90%. And here it's flipped. Right. But she has the burden to show that the government is unable and unwilling to protect her, and she hasn't shown that. Well, that's some evidence of it. Your best argument is whether it compels. I'm not sure. If I were deciding this in the first instance, I'm not sure I would have decided it as the IJ and the BIA did. But now I'm in a deferential standard. You argue that the Guatemalan government has taken concrete steps to combat domestic violence, but the report doesn't really discuss whether many of these efforts are effective. Did the agency falsely equate legislative and executive enactments prohibiting persecution with the on-the-ground progress? And so that's what you need to tell us, why it doesn't compel, because it's not a strong case. She did put on some evidence. It's the State Department report. She also testified. Well, but what does the country condition report have to show from your perspective, along with her credible testimony to satisfy her burden that the government is unwilling or unable? What would it have to show? That the government is making efforts to address the issues, the domestic violence issues and the race issues. And it does say that the law criminalizes race and that the law prohibits domestic abuse. It also says that it allows for the issuance of restraining orders against alleged aggressors and police protection for victims. So there is some evidence that the government is trying to prevent harm against women. So in Bringus Rodriguez, we noted that there had been efforts in Mexico to deal with discrimination and abuse against gays, gay men. But we specifically noted that, you know, although the laws are there, there's another question. Maybe that, you know, the existence of the government's efforts to adopt laws to protect people who are gay in Mexico. But the evidence in the record, the on-the-ground evidence, is that they're not able to. Why isn't that the same here? I mean, the board cites Bringus, but they don't really deal with that. Well, they've cited to say that she in part needs to or should have reported the abuse and that the fact is reconsidered. And Bringus is somewhat distinguishable because Bringus was a child when this happened to him. She's an adult. She could have reported the abuse. But the Bringus opinion goes way out to make it a point. And we have prior cases as well that make it clear that reporting is not the end-all in this. Right. I can't remember who said, but in Castro Perez, it's almost similar to this case where the commissioner didn't report the abuse to the police, and her case was denied because she failed to show that the government's unable or unwilling to protect her. So this is Judge Randyke, and I'm the one who said that. And that's important to me because it seems to me like we've got these two different cases, the case that Judge Paez is mentioning and Castro Perez, and they kind of both seem to have different outcomes. They both seem to have bad general records of country enforcing their laws. And so it seems to me the difference would have to be, if you're going to have a difference, it'd have to be based on other evidence. And here the only other evidence is her testimony. One aspect of that is bad for her in that she didn't report it. But more generally, I guess the question I've got is, the IJ made a clear adverse credibility finding here. And I don't know, we're supposed to review the record as a whole to see if the evidence in the record compels a different conclusion than what the BIA concluded. Now, we're stuck with the BIA's grounded decision, but we're not actually stuck with the evidence that the BIA relied on. The Ninth Circuit is very clear about that. We look at all the evidence. So is the Supreme Court. So is the statutory law. And so I don't understand why we don't also look at, as part of that evidentiary matrix, the adverse credibility finding. It's just the board didn't rely on it. That's fine. So if the board had, if there was six pieces of evidence and the board says, we're just looking at the first two. We're not saying the last four aren't probative pieces of evidence that the IJ found, but we're just looking at the first two. We think that justifies our decision. But on review, we can't overturn the board unless looking at all six pieces of the evidence, it compels a different conclusion. So why if one of those six pieces of evidence is the adverse credibility finding, why is adverse credibility finding somehow treated differently than the rest of the evidence? We have to look at all the evidence. That's very clear. The Supreme Court has said that. The statute says that. Our review, though, is of the BIA's decision. Isn't that correct? Yes, the reviews of the BIA. And the BIA did not rely on the adverse credibility. So we assume that she's credible. Isn't that correct? That's exactly. Okay, but why do we do that? I don't understand that. Why do we assume that she's credible? Because we're not weighing her credibility. I'm not talking about assuming she is or isn't. I'm just saying that we can only overturn the BIA if the evidence in the record as a whole compels a different conclusion. Part of that evidence is the adverse credibility finding. That's part of the evidence just like the rest of the evidence. So why do we not take that into consideration? Why do we have to pretend like she's credible when part of the evidence is the adverse credibility finding? That doesn't make any sense to me. Counsel, isn't that all part of how we review administrative decisions? Yes. Are you sure about that? This is Judge Panther. Are you sure about that, Counsel? Because I think the Ninth Circuit's been very clear that we can't rule on a different ground, quote, ground, than what the BIA based decision on. But the Ninth Circuit has also been very clear that in reviewing that ground, we look at all of the evidence, the entire evidence, but not just that, but the Supreme Court has been very clear on that too. And so, is that right? I mean, do we, if the Ninth Circuit, if the BIA ruled on one ground and said some of the evidence we think supports this ground, but we disagree with the BIA on that, that that evidence supports that ground, but we think that the evidence as a whole supports that ground, then we can't overturn the BIA, right? Because the evidentiary record as a whole does not compel a different conclusion. Isn't that right? I'm not sure, Your Honor. In this case, the unable or unwilling decision is positive. I don't believe that you can look beyond the, or review the credibility determination because the Board didn't rely on it. We take her as credible. I interrupted you at the beginning when you were talking about how substantial evidence supported what the Board did. I still have not heard your, and part of it was my interruption, so I would like you to tell me what is your best, what in the record that we have to review, and if we assume that since the Board didn't rely on the adverse credibility, the evidence that's in the record, what is your best argument that, what is in that record that supports what the BIA did and therefore would not compel a different result? Give me your best record. Well... All right, it starts with she didn't report, okay, but that's not the end of it. So tell me what's your other best, what is in the record that supports what the BIA did? Well, the 2014 Human Rights Report supports the Board's decision. It lists that the government's taking steps to combat violence against women, and her own testimony saying that she believes that, to some extent, she believes that the police would help her because she told her ex-boyfriend that she would report him, and also she told her former employer and her neighbor, or they told her to report the incident to the police, so that suggests that they believe that the police could help her. The record also shows that her boyfriend told her to, if she reported it, he would kill her. Yes, it does show that, but she also... That's very similar, it seems to me, as the Castro Perez case where the father, she expressed the same concern about the father retaliating against her if she reported it. Right. And there's case law, there's TANADA, where the court has held that although the petitioner was subjectively believed that it would have been futile to report the abuse to the authorities, the agency was not required simply to accept the assumption, his assumption, that it would be futile to do so. So there's case law supporting the court's decision that the petitioner failed to meet her burden to show that the government would be unwilling and unable to protect her. Ms. Perry, could I just ask you one last question regarding the procedural posture of this case? So as I understand it, the board, as we've been discussing, didn't go off on adverse credibility, just decided the case is on the basis of the unwilling or unable prong of the past persecution analysis. The board didn't go on to any other elements, is that correct? That's right. So if we were to agree with the petitioner and remand to the board, the board would have to go through the rest of the analysis, right? That's correct, yeah. And at that point, the board could take another look at the adverse credibility decision. Right, yeah. And whether or not there is a protected group in play. Right, that's right. Okay. The board didn't do that. And I know we're kind of over time, Judge. Go ahead. So this kind of goes to my point, I guess. So let's say we sent this back and the board looked at it and said, okay, relying on the adverse credibility of the finding, we reached the exact same ground. We reached the same decision on the same ground, but we're now throwing the adverse credibility part of the evidence into it. We didn't rely on that, and I understand they didn't, but we are now. And so that gets appealed and it comes back up to us. And now we say, okay, well, you relied on the adverse credibility, so we're going to uphold the board's decision or we're going to deny review. At that point, why did we lose the first time? Because our job on review right now is to say, does the evidence as a whole compel a different result? And so wouldn't we just have just proven, if this whole scenario I just talked about and it came back and we upheld it, that the evidence as a whole does come? Because the evidence scenario matrix wouldn't be changing at all. It'd just be that the board would be affirmatively relying on different evidence. But that's not a ground. There's a difference between grounds and evidence. And we have to look at all of the evidence to see if it justifies, if it compels a different result on that ground. And so it seems to me like if the board was to go back and decide on this same ground based on the adverse credibility determination, that would nicely demonstrate that we're doing it wrong if we don't take that into account in deciding whether to uphold the board. Did you want to offer any comment, counsel? And then we better end this. We'll move. You're talking to the petitioner's counsel? Yeah, but let me hear if Ms. Perry has anything she wants to say in response to Judge Van Dyke's question or statement there. No, I don't have any comment on that. Okay. All right. Thank you, Ms. Perry. We'll hear. You had a few minutes of rebuttal. Mr. Sarno. Thank you very much, Your Honor. Number one, to the Honorable Judge, twice the BIA had a chance to rule on the adverse credibility. There's no grounds to uphold the adverse credibility of the judge. It is based on no facts. At the first time, they didn't uphold it. They sent it back assuming she was credible based on the new testimony. The judge agreed with my client that she was abused and a victim. They said they didn't understand why the judge said it was unclear. That's the first BIA decision. The second BIA decision is two to one, finding her credible, assuming all the words she used were credible, including her Mayan indigenous background. Counsel, this is Judge Van Dyke. First, on that second decision that's before us, the BIA did not find her credible. In other words, it did not find that the lack of credibility finding was not justified by substantial evidence. It said assuming arguendo that she's credible. So that's not quite right. That would make a difference, I think. If the BIA said we're looking at the IJ's credibility finding and we are rejecting it the same way we could if it wasn't supported by substantial evidence, that would be one thing. That's not this case. But the other thing, too, is as I'm looking now at the IJ's second decision, the one that is at issue here, one, two, three, four, five pages of justification on the adverse credibility. This is not some adverse credibility finding that's not supported, that the IJ didn't put a lot of work into. This is a significant and, I think, compelling adverse credibility finding by the IJ. And the BIA in 221, one of the Board of Immigration judges agreed with my client that she should have got the relief. They assumed an arguendo because they knew the judge's decision couldn't be upheld. It would be mocked. It would be thrown out of court. There is no basis for that judge's adverse credibility finding. Insofar as the second matter, based on what counsel, the honorable judge, said, 90% of prosecutions don't occur in this country when women are killed. The police aren't trained. They don't investigate sexual assaults. That's in the record. So her reporting, it makes no difference, as this court stated in Arifi. It would be futile on her part to even report it in Guatemala because the police wouldn't protect her. Thank you very much. Okay, thank you, counsel. We appreciate your arguments, counsel, and we appreciate your willingness to participate in the virtual court. Thank you all very much. We're going to take just a few-minute recess, a five-minute recess, while we get to our next case, which is going to be Jenkins v. Walmart Realty.
judges: Paez, Callahan, Vandyke